Filed 6/24/22  P. v. Woods CA2/5
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CEDRIC J. WOODS,<br><br>    Defendant and Appellant. | B297732<br><br>(Los Angeles County<br>Super. Ct. No. KA033813) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Salvatore T. Sirna, Judge.  Affirmed, in part, reversed, in part.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

# I.    INTRODUCTION

Defendant Cedric J. Woods appeals from the trial court's order denying his petition under Penal Code section 1170.95[1] for resentencing on his murder and attempted murder convictions. According to defendant, the trial court erred by denying his petition without first issuing an order to show cause and conducting an evidentiary hearing.  He further contends that the court erred by denying his petition on the alternative ground that Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) is unconstitutional.  We affirm, in part, and reverse, in part.

# II.    BACKGROUND[2]

On August 16, 1997, the murder victim, 12-year-old D.W. (the victim), and 16-year-old M.H. (the attempted-murder victim) were sitting in Kennedy Park in Pomona with W.I. and another companion.  The attempted-murder victim saw a large four-door maroon car in "'bad shape'" emerge from a nearby housing area. The front passenger made a gang sign for the Westside Mafia. The car then turned around, entered the park, and stopped in a parking lot.  When four men exited the car, the attempted-murder victim told the victim to get on his bicycle and leave.  The victim rode away, and the attempted-murder victim ran with

---

[1]    All further statutory references are to the Penal Code.

[2]    The following is taken from the opinion in the direct appeal from the judgment of conviction.  (*People v. Woods* (Apr. 8, 1999, B121999 [nonpub. opn.].)

him.  At some point, the attempted-murder victim took control of the bicycle while the victim rode on the handlebars.

The four men returned to the car and followed the two minors.  The victim warned that one of the car's doors was open, causing the attempted-murder victim to cross to the opposite side of the street, where he saw the passenger-side door of the car open and heard gunfire as the car came about two feet from the bicycle.

The minors dropped the bicycle and ran down a driveway.  The attempted-murder victim saw blood coming from the victim's side and mouth and, when the victim fell, told bystanders across the street to call the police.

Pomona Police Officer Brian Bozarth responded to a call of a shooting around 2:50 p.m. and found the two minors, both of whom had gunshot wounds.  The victim died from his wounds at the hospital.

The attempted-murder victim told Officer Bozarth that the Westside Mafia was responsible for the shooting.  When the officer asked him if he recognized anyone, he replied, "'Thee Dog.'"  He also told another officer that Thee Dog was the person with the gun.

Pomona Police Detective Greg Guenther interviewed the attempted-murder victim the day after the shooting.  He admitted that both he and the victim were members of the Trey57 Sintown Crips and that, after the men in the car made Westside Mafia gang signs, the victim responded with Trey57 signs.  He also told the detective that he recognized the right-front passenger as Thee Dog, and he identified Tyrone Hill from a photographic line-up as Thee Dog.

Detective Guenther interviewed the attempted-murder victim again a few days later and showed him a photograph of defendant's car which he confirmed looked like the one involved in the shooting. At trial, however, he was more equivocal about the identifications and descriptions.

About a month after the shooting, Detective Guenther interviewed W.I. who selected a photograph of Tyrone Hill, known to him as Thee Dog, as the right-front passenger in the car that chased his two companions from the park. The detective showed W.I. another set of photographs, and he identified defendant, whom he knew as "'Tiny Dot,'" as the driver of the car. But at trial, W.I. denied making the identifications.

When defendant was interviewed after the shooting, he claimed his car had been parked at his residence the entire day of the shooting with a flat tire. According to defendant, he spent the afternoon at a mall and a park with Hill and another man.

Officer Bozarth testified at trial as an expert on Pomona street gangs. He explained that the shooting took place inside territory claimed by the Trey57 Sintown Crips. Defendant and Hill had previously admitted to Officer Bozarth that they were members of the Westside Mafia. The officer confirmed that Hill's gang name was Thee Dog.

Pomona Police Detective Robert Nelson testified that the Westside Mafia Crips were rivals of the Trey57 gang. He explained that making gang signs in a rival gang's territory was a challenge and a gesture of disrespect. Detective Nelson also explained that gang members were generally unwilling or reluctant to cooperate with law enforcement because they preferred to handle matters themselves and because they did not want to be known as "'snitch[es].'"

# III. PROCEDURAL BACKGROUND

In an information, the Los Angeles County District Attorney charged defendant in count 1 with the murder of the victim and in count 2 with the attempted, premeditated murder of the attempted-murder victim. The District Attorney also alleged that: the murder was perpetrated by means of discharging a firearm from a motor vehicle at another person outside the vehicle with the intent to inflict death; the attempted murder was committed willfully, deliberately, and with premeditation within the meaning of section 664, subdivision (a); the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang within the meaning of section 186.22, subdivision (b)(1) and (4); and a principal in the commission of the offenses was armed with a handgun within the meaning of section 12022, subdivision (a)(1).

The jury found defendant guilty of murder and attempted premeditated murder. The jury also found true the allegations that: the murder occurred during a drive-by shooting within the meaning of section 190.2, subdivision (a)(21); both offenses were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivisions (b)(1) and (b)(4); and a principal was armed with a firearm in the commission of both offenses within the meaning of section 12022, subdivision (a)(1). The trial court sentenced defendant to life without the possibility of parole for the murder conviction and to a consecutive term of 17 years, comprised of a nine-year term for the attempted murder conviction, two three-year terms for the section 186.22 enhancements, and two one-year terms for the section 12022 enhancements.

On April 8, 1999, the Court of Appeal issued its unpublished opinion in defendant's direct appeal from the judgment of conviction, case number B121999. Among other things, the court concluded that there was sufficient evidence showing that defendant "shared the shooter's intent to kill." The court also concluded that the trial court's instructions on the natural and probable consequences doctrine were not erroneous.

On January 3, 2019, defendant, who was represented by counsel, filed his petition for resentencing under section 1170.95. On March 20, 2019, the prosecution filed its opposition to defendant's petition, arguing that the opinion in the direct appeal concluded that there was sufficient evidence to show that defendant shared the shooter's intent to kill. The prosecution also argued that the jury's true finding on the special circumstance allegation under section 190.2, subdivision (a)(21) included a necessary finding that defendant shared the shooter's intent to kill.

On April 2, 2019, defendant filed his reply in support of his petition. In addition to certain constitutional arguments, defendant asserted that he was entitled to resentencing because both his murder and attempted murder convictions were based on the natural and probable consequences doctrine.

On April 24, 2019, the trial court issued an order denying the petition because defendant was not entitled to relief as a matter of law. The court found that "although [defendant] was not the actual killer, [he], with the intent to kill, aided and abetted the actual killer in the commission of the murder." The court also concluded that defendant's attempted murder conviction did "not qualify for consideration under [section]

6

1170.95[, subdivision (a)]." In the alternative, the court ruled that Senate Bill 1437 was unconstitutional.

Defendant appealed from the order denying his section 1170.95 petition and, on October 21, 2020, we affirmed the order. Defendant filed a petition for review in our Supreme Court and on December 30, 2020, the Supreme Court granted the petition for review and deferred additional briefing until further order of the court.

On October 5, 2021, the Governor signed Senate Bill No. 775, which sought to "clarif[y] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Sen. Bill No. 775 (2021–2022 Reg. Sess.), as amended October 5, 2021, p. 3; Stats. 2021, ch. 551, § 1–2 (Senate Bill 775).) The Supreme Court then transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of Senate Bill 775 and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). We vacated our opinion, and defendant and the Attorney General then submitted additional supplemental briefs.

On or about January 6, 2022, while this appeal was pending, defendant filed a new petition for resentencing pursuant to section 1170.95; and the trial court set a hearing on the petition for March 8, 2022.

# III.   DISCUSSION

## A.   *Section 1170.95*

Section 1170.95, as amended by Senate Bill 775, "creates a procedure for convicted murderers [and attempted murderers] who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 957.) Where a petitioner files a section 1170.95 petition that contains all of the statutorily required information and requests counsel, the court must appoint counsel and order briefing. (*Id.* at p. 966.)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) In determining whether petitioner has made a prima facie case, "a trial court can rely on the record of conviction." (*Lewis, supra*, 11 Cal.5th at pp. 970–971.) ""[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." [Citation.] "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'" [Citation.]" (*Id.* at p. 972.)

If the trial court issues an order to show cause, within 60 days of such order, the court shall hold a hearing "to determine whether the petitioner is entitled to relief." (§ 1170.95, subd. (d)(1) & (3).) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of

murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).) The trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable doubt. (See *Ibid.*; *People v. Gentile* (2020) 10 Cal.5th 830, 855 ["section 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief"].)

B.    *Analysis*

1.    <u>Murder Conviction</u>

Defendant contends that the trial court erred by denying his petition on the murder conviction without first issuing an order to show cause and holding an evidentiary hearing. The jury was instructed with CALJIC No. 8.25.1 which provided that a murder committed by a perpetrator who discharged a firearm from a motor vehicle at a person outside the vehicle was first degree murder if the perpetrator intended to inflict death. Because the jury was also instructed with CALJIC No. 3.02, defining the natural and probable consequences doctrine, defendant concludes that the instructions allowed the jury to convict him as an aider and abetter of a murder that was the natural and probable consequence of shooting from a motor vehicle.

Although CALJIC Nos. 8.25.1 and 3.02 may have allowed the jury to convict defendant on an aiding and abetting theory under the natural and probable consequences doctrine, the jury's

9

findings included a true finding on the special circumstance allegation under section 190.2, subdivision (a)(21). On that allegation, the trial court delivered CALJIC No. 8.80.1 which provided, in pertinent part: "If you find that the defendant was not the actual killer of a human being, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant, *with the intent to kill* aided, abetted, or assisted any actor in the commission [of] the murder in the first degree." (Italics added.) Accordingly, the jury's true finding on the special circumstance allegation necessarily included a finding that defendant, who was not the actual killer, aided and abetted the shooting with the intent to kill, i.e., he shared Hill's intent to shoot and kill the victim. In other words, the jury instructions and the special circumstance finding demonstrate that defendant could not have been convicted of first degree murder under a natural and probable consequences theory.

Based on the record of conviction, including the jury's true finding on the special circumstance allegation under section 190.2, we conclude that the trial court did not err by denying the petition as to the murder conviction without issuing an order to show cause because defendant's intent to kill the victim made him ineligible, as a matter of law, for resentencing under section 1170.95. *(People v. Daniel* (2020) 57 Cal.App.5th 666, 677.)

10

### 2.     Constitutionality

Defendant additionally challenges the trial court's ruling that Senate Bill 1437 is unconstitutional.  The Attorney General concedes that the court's constitutional ruling was erroneous, and we agree.  But, because the court also correctly denied defendant's petition on the alternative ground that he was ineligible as a matter of law for resentencing on his murder conviction based on the record of his conviction, we affirm the denial of the petition on that basis.

### 3.     Attempted Murder Conviction

Defendant contends, the Attorney General concedes, and we agree that under Senate Bill 775, defendant is entitled to a remand for further proceedings on his attempted murder conviction.  We therefore will remand for that limited purpose.

11

## IV. DISPOSITION

The trial court's order denying defendant's section 1170.95 petition is affirmed as to his murder conviction, but reversed as to his attempted murder conviction. The cause is remanded with directions to issue an order to show cause and hold a hearing pursuant to section 1170.95, subdivision (d) only as to the attempted murder conviction on either the instant petition or the new petition filed on or about January 6, 2022. Alternatively, the court may consolidate the instant proceedings with the proceedings on the new petition.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.

12